Dye, J. (dissenting).
I dissent and vote to reverse on all the grounds stated by Desmond and Fttld, JJ., to which I wish to add the following: In this controversy we deal with á problem that, under ordinary circumstances, would bé relatively simple — does the complaint state a cause of action? I say relatively simple for if under a fair reading of the allegations it appears that the commission of the threatened act, or a continuance thereof, would produce injury to the plaintiff he is entitled to have it restrained. However, in this instance the nature of the rélíef sought, and the parties litigant, combine to complicate the situation by posing a threshold question which strikes at the very fundamentals of orderly government. To state it simply and concisely, may judicial authority be invoked to restrain the Legislature from committing an irreparable injury to a personal right long known to the common law, embodied by implication in our State Constitution and codified into our statutes as section 353 of the Civil Practice Act?
Here, as we know, a conversation between a parole violator and his attorney was surreptitiously obtained by the use of an electronic recording, while they were using the counsel room in the Westchester County Jail, and has since come into the hands of the defendants. This convérsation the defendants threaten to make public, an action they justify on the broad general theory that it is a part of the public record made in the course of its investigation into “ the operation of the State Government * * * administration of the laws And the detection and prevention of unsound, improper or corrupt practices
*104 Our problem is simplified in great measure by the circumstance that for the purpose of this appeal (1) it is deemed that the subject matter of the recorded conversation is within the scope of the committee’s inquiry, and (2) that the relationship of attorney and client exists.
We all agree that section 353 of the Civil Practice Act securely seals the lips of an attorney and affords privilege against testimonial compulsion unless waived by the client. In the courts below and in the majority opinion, it is pointed out that the protection does not extend to persons who have overheard the conversation. However, we deal here with a conversation obtained by means of an electronic device, the use of which was carefully concealed, was surreptitious and wholly unauthorized by law. Furthermore, the use of it was at a time and place deemed inviolate to intrusion by others — the sanctity of a counsel chamber during an interview between an attorney and his client.
As I see it, the ancient rule that conversations had in the presence of third persons breaks the seal of privilege — absent a waiver of the privilege by a client—has no relevance when the conversation is unlawfully intercepted by a concealed recording device. Under such circumstances the application of the rule takes on a new significance. A concealed electric device is not a third person in any sense of the word and transcription of the intercepted material does not change its status. In that view the third person exception has no application to this situation. The privilege survives the intrusion. Nor does the fact that this recording is not for use in the course of a trial, but for use in connection with a duly authorized legislative inquiry, operate to bar the privilege. There is a vast difference between the use of material obtained by unlawful search and seizure, and the use of a surreptitious recording of a conversation between a client and his attorney. A search may be had on a proper showing—in only one case may the seal of confidence between a client and his attorney be broken and then only by the client — for unless so waived the court is otherwise powerless to obtain it. The co-ordinate branches of government have no greater or different power in this regard.
It has been asserted that the seal is broken in this instance by the circumstance that the recording was made by a depart *105 ment of the executive branch and by them turned over to the Legislature, and that under the circumstances the courts are powerless to act. This is not so — the laws of the State apply with equal vigor to all members of society—not only to the citizen in his relation to his government, but to officials in the discharge of their duties in behalf of the citizen. The executive and legislative branches, no less than the judicial, are subject to the mandates and the obligations of the law. It has often been said that ours “ is a government of law and not of men ”. Now the Constitution, so far as I have been able to ascertain, makes no exception; by strong implication the rights of the individual are paramount — being subordinated only to the overriding needs of the general welfare. True, the Constitution does not in so many words make inviolate the confidences of a client and his attorney. However, in order to make certain that the constitutional mandate that no person shall be deprived of life, liberty and property without due process of law (N. Y. Const., art. I, § 6) have effect, the Legislature in its wisdom codified into the State law (Civ. Prac. Act, § 353) an absolute privilege. This salutary provision is a solemn declaration of State policy which all connected with the administration of government are duty bound to observe and make operative — there is no exception.
I submit that just as the courts are bound, so too are the legislative and executive branches of the government — the safeguards provided by law may not be flouted by either. It is a clumsy subterfuge to say that, because the inquiry is not judicial in nature, the Legislature is not bound to observe fundamentals in the discharge of its legislative function. Nothing could be further from the mark. When the citizen’s rights are disregarded, our cherished freedoms will end and the government will cease to exist “ of, for and by the people ”.
Several landmark cases have been pointed to in which the courts have intervened to protect the citizen in his property rights, including the restraint of a President of the United States. As a matter of simple truth, personal rights are of equal importance. The Constitution says so and that truth has now become part of our great tradition — the correctness of which is no longer open to challenge. The privilege attached to a conversation between a client and his attorney is as fundamental as anything can be in the administration of government.
*106 The separation of powers is stressed to furnish a basis for creating an exception to the public policy enunciated in section 353. It has been said that the Legislature, whenever it sees fit, may abolish the privilege by repealing or amending the statute — an event which I am sure no member of any Legislature would ever sponsor and, if sponsored, would not support.
We must not lose sight of the undisputed fact that the conversation sought to be publicized was between a prisoner incarcerated in a jail and his attorney. Ostensibly, the prisoner could converse with his lawyer freely, confidentially and in private, without fear of reprisal. As it turns out he had neither freedom, confidentiality or privacy. To ‘ ‘ bug ’ ’ a conversation under such circumstances may not be excused under the guise of prison security. To say so is an affront to the members of the Bar and is a reproach to our governmental system, for to do so is in clear violation of the announced public policy of the State. Lawyers, we must remember, are officers of the court. To sanction disclosure of conversations had with the client— unless waived — strikes at an institution which is far more sacred than the need that legislative inquiries be public. The complaint, as I read it, states a cause of action.
The judgment appealed from should be reversed and the motion atacking its sufficiency should be denied.